JAMES MORSE *v.* TIMOTHY WEYMOUTH.

*Trespass in repairing highway. Construction of deed. Submitting it to the jury.*

The defendant, for the purpose of widening a side-hill highway upon the plaintiff's land, drew stone and dumped them on the lower side of the road so that some of them rolled down against and through the plaintiff's fence into his field. The widening of the road was necessary, and was done in a proper and reasonable

manner, with the approval of the highway surveyor.  *Held*, that the 'defendant was not liable to the plaintiff in an action of trespass for so doing.

The construction of a deed should not be submited to the decision of the jury with-out limitation or restriction, or specific instruction in reference to it.  But if it is, and they give it a correct construction, a new trial will not be granted.

A deed of ''a part of lot No. 17,'' ''laying in the N. E. corner of said lot, and is that part of said lot which lays on the north side of the road,'' and an exception in a deed of lot No. 17 to another person, of the same date, of that part of it '' which lays on the north side of the road at the N. E. corner of said lot, estimated at about three-fourths of an acre,'' construed as conveying and excepting not only the north-east corner piece but also a small strip on the north-easterly side of a road running from the south-east to the north-west over said lot but separated from the N. E. corner piece by a curve in the road, which run for a short distance upon the easterly line of the lot.

TRESPASS ON THE FREEHOLD.   Plea, the general issue; trial by jury, June Term, 1855,—POLAND, J., presiding.

The plaintiff gave evidence tending to show that 'in the summer of 1853, the defendant drew several loads of small stone from his fields upon the highway running through the plaintiff's farm, and where it run along upon a side-hill, and turned them off the lower side of the road ; and that some of the stone rolled down against the plaintiff's fence, and some rolled through the fence into his fields,—and that some of them were piled or thrown off opposite. and obstructed a bar-way to the fields, and that the plaintiff was compelled to remove them.

The defendant's evidence tended to prove that the highway at this point was very narrow and unsafe, and that it was necessary and proper to make said road wider, and that the piling of small stones upon the lower side of the road 'was a proper mode of widening and repairing the same; that after the defendant had drawn and placed two loads of stone, he applied to the surveyor of the district, who approved of what had been done, and told him he might draw more stone and place there, but, as the taxes were all expended, he must do it without charge to the district; and that after this the defendant drew four or five loads more and placed them on the lower margin of the road ;—and that, in a few days after this, the selectmen of Waterford ordered a sum of money to be laid out on the road at this same point, in widening it further, and in covering up the stone the defendant had placed there with earth, and that but very few stones rolled down against the plain-

tiff's fence, and that no damage was done thereby, and that the bar-way was obstructed by what was done by the selectmen, and not by him.

The court charged the jury that, if the road was unsafe at this point, by reason of its being narrow, with a declivity on the lower side, and the placing of the stones there was a proper method of repairing the road, and was done by the defendant for that purpose, and in a proper and reasonable manner, and was approved by the highway surveyor or selectmen, that the defendant would not be liable to the plaintiff; and that for the two loads of stone placed there before any application to the surveyor, if they were placed there properly for the necessary repair of the road, the defendant would not be liable, if it was subsequently approved of by the surveyor.

The plaintiff read in evidence a deed from George Alexander to himself, dated February 25, 1841, of lot No. 4 in the 7th range and lot No. 17 in the 6th range, " except that part of said lot No. 17 which lays on the north side of the road at the north-east corner of said lot, estimated at about three-fourths of an acre." The defendant also read in evidence a deed from the said George Alexander to himself, dated the same 25th of February, 1841, of " a part of lot No. 17," * * " laying in the north-east corner of said lot, and is that part of said lot which lays on the north side of the road." Both parties introduced plans of their farms, which adjoined each other, showing the relative location of said land, and the location of the highway, and of that portion of lot No. 17 which lay upon the north or east side of the highway in question, both which plans were referred to by the bill of exceptions. The plaintiff proved that near the southern termination of that part of lot No. 17 lying on the easterly side of said highway, the defendant had cut and cleared away some small trees and brush, partly between the travelled path of the road and the defendant's fence, and partly in the defendant's fields, as enclosed by his fence,—and claimed that the portion of lot No. 17 deeded by Alexander to the defendant did not include the strip upon which said trees were cut, but was restricted to the triagular portion directly at the north-east corner of the lot. The court submitted it to the jury to determine from the language of the deeds, and the condition and location of the land, what was

intended to be conveyed,—whether only the triangular portion in the north-east corner, or that and the strip below, upon that side of the road, upon which the trees were cut. The jury returned a verdict for the defendant. Exceptions by the plaintiff.

From the plan which came into the hands of the reporter it appeared that the course of the east line of lot No. 17 was N. 23 deg. W., and that the highway from the east struck said east line between fifty and sixty rods southerly from the north-east corner of the lot, and thence run northerly on said east line, but bearing to the westerly so that it left it about sixteen rods north of the point where it first struck it, and continued to bear westerly for the distance of about ten rods further, and then curved easterly, so as to come in contact with the east line of the lot about five or six rods further north, and then run upon the line about four rods, and left it at a point about twenty rods south of said north-east corner, taking a more north-westerly course and striking the north line of the lot about fifteen rods west of said north-east corner. The north-east-corner of the lot cut off by the road contained about one hundred, and the piece in dispute not over from ten to twelve rods of ground, its greatest width not exceeding one rod, and tapering from that to a point about ten rods distant in one direction, and from five to six rods distant in the other. The defendant owned the land east of both pieces, which were about four rods apart, being separated from each other by the passing of the road over said east line as before mentioned.

——————————— for the plaintiff.

The court erred in submitting to the jury what was conveyed by the deed from Alexander to the defendant. The deed is definite in terms, and fully describes what was conveyed. *Exr. of Stevens* v. *Hollister*, 18 Vt. 294.

The defendant had no right to make any improvement upon the road unless by direction of the surveyor or selectmen. And the stone drawn and rolled down against the plaintiff's fence and into his field by the defendant, before being ordered by the surveyor or selectmen, was a trespass.

*S. W. Slade* for the defendant.

There can be no question, from the situation of the land con

veyed, and from the language of the conveyances, but that the grantor as well as both these parties intended that the plaintiff should take by his deed the land upon the south side of the high-way, and the defendant what was upon the north side of it, and that the highway should be the line between them. The identity of the land conveyed, and the actual extent of disputed boundaries, are always questions for the jury. *Hodges* v. *Strong*, 10 Vt. 247; *Preston* v. *Robinson & Ross*, 24 Vt. 583; 4 Greenleaf's Cruise on Real Property 242, note.

As to the repairs made by the defendant with the stones, the jury have found that the road at this point was unsafe, and that the stones were put there for the purpose of repairing it, and that the work was done in a proper and prudent manner. When an inhabitant of a town repairs a highway just as the town is in duty bound to do it, he should be regarded as *acting in behalf of*, and for the benefit of the town. But if the assent of the surveyor was necessary in order to justify the defendant in making these repairs, his subsequent ratification of the act is equivalent to a previous authority. It is well settled that an act performed for another by a person without any prior authority becomes the act of the principal if he subsequently approves and adopts it. He thereby confirms it and makes the act his own. *Culver* v. *Ashley*, 19 Pick. 300, 303; 1 American Leading Cases 569 and note 572-3-4; Story on Agency, § 242-244.

The opinion of the court was delivered, at the circuit session in September, by

REDFIELD, CH. J. I. The question made by the plaintiff in regard to the two loads of stone drawn by the defendant and placed upon the road before consulting the highway surveyor, as the jury were required to find that it was properly done, and done with a view to remedy a defect in the road, and was approved and adopted subsequently by the surveyor, it seems to us the transaction should be regarded in the same light as if it had been previously directed by the surveyor, and that there was no just ground for claiming damages of the defendant in an action of trespass, as if it were a mere tort; or, indeed, under the finding of the jury, for claiming damages at all.

II. In regard to the construction of the deed being submitted to the jury without limitation or restriction, and without specific instruction, the jury being required merely to give it such a construction as they judged the parties intended, it was no doubt error. We have had occasion to speak upon this subject so frequently, and it is so obvious and so familiar a principle of the law, that it seems almost useless to use many words upon the subject. If the facts in regard to the relative location of the road and the lot were in dispute, or more properly, if there had been any question in regard to the north side of the road, as if the road had run due north and south at this point, it might have been a case of latent ambiguity, or, as some of the English cases denominate it, a case of equivocation, and it might have been proper, under proper evidence, to have submitted to the jury which side of the road was intended by the north side. But notwithstanding this error, if the jury took the correct view of the deed, there is no occasion for a new trial. For the case is this: the title of the whole lot being in George Alexander, he deeds to the plaintiff all except " that part of said lot which lies on the north side of the road, at the north-east corner of said lot, being about three-fourths of an acre,"—and to the defendant he deeds that part of the lot " lying in the north-east corner of the lot, being that part which lies on the north side of the road, three-fourths of an acre more or less." Both deeds bear the same date.

Now, it is obvious that the description is the same in effect in both deeds, and that there is nothing definite in the description, except its being on the different sides of the road. For the quantity is not fixed definitely in the deed to the defendant, and, if it were, it would not determine the locality. The part of the lot, too, defines nothing with certainty. But the side of the road is definite, a road having but two sides. And, if one is called north, it imports that which is more north than the other, that is, more north than south. That is easily discovered in this case, if the plan is reliable. And, as both plans are referred to in the case, we have used the one presented upon the trial, (having waited a long time for the other.) By this plan, the road at this point runs from north-west to south-east, one side being north-east and the other south-west. The side intended by the north side of the road, is, therefore, the north-

east side, as the opposite side is opposed *in toto* to a northern direction. The quantity of land is not much affected whether the deed is made to include the piece nearest the corner of the lot only, as the other small fringe is almost connected with it, and is also upon the north side of the road. In either case, it is about three-quarters of an acre. The small fringe is not strictly in the north-east corner of the lot, but it is upon the north side of the road. And unless we say the deed to the defendant meant to include all the land upon the north side of the road, there is nothing definite about it. And, it seems to us, as the deed finally fixes upon that definition, and that is certain and unmistakable, it should govern. " And is that part of said lot which lies upon the north side of the road," &c. Even if it were necessary to qualify the other parts of the description, which are uncertain, as the quantity and the corner of the lot, as if the quantity should be two acres, and a portion of the land extend so far south as to be nearer the south-east corner of the lot than the north-east, still, as most of the land is in the north-east corner of the lot, and this little strip or fringe is all upon the north side of the road, if it were all connected there could be no question at all as to the proper construction of the deed. And we think the road crossing the line of the lot at a single point, for a short distance, should not vary the construction of the deed, and that it must be construed to convey all the land in that lot upon the north side of the road.

Both deeds bearing the same date affords something of a natural presumption that the intention probably might have been to deed that portion of the lot upon either side of the road, so as to leave the road for the division between the different owners.

The jury, therefore, without proper instructions, having adopted the proper construction of the deed, there is no occasion for a new trial.

Judgment affirmed.